**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANA CARPENTER and ANN CARPENTER, his wife,<br>Plaintiffs,<br><br>v.<br><br>WORLD KITCHENS, LLC; MACY'S, INC.; NEW ENGLAND MOTOR FREIGHT, INC.; JOHN DOES 1-10; and ABC CORPS. 1-10,<br><br>Defendants. | Civil Action No. 14-3991 (JLL)(JAD)<br><br>OPINION |

**LINARES, District Judge.**

This matter comes before the Court by way of two motions: (1) Defendant World Kitchens, LLC ("World Kitchen")'s motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure as to Plaintiff Dana Carpenter's negligence claim and Ann Carpenter's per quod claim (collectively, "Plaintiffs") [CM/ECF No. 16]; and, (2) Defendant Macy's, Inc. ("Macy's")'s cross-motion for judgment on the pleadings pursuant to Rule 12(c) as to the same claims. [CM/ECF No. 18.] The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, World Kitchen's motion for summary judgment is denied and Macy's cross-motion for judgment on the pleadings is granted.

I.   **BACKGROUND**

As the Court writes only for the parties, it will set forth only those facts it deems relevant to deciding Defendants' motion.

1

Plaintiff Dana Carpenter ("Mr. Carpenter") was a truck driver for New England Motor Freight, Inc. ("NEMF"). (Plaintiffs' Local Civil Rule 56.1(a) Statement of Material Facts Not in Dispute (hereafter "Pl. Rule 56.1(a) Statement"), ¶1.) Plaintiffs certify, and Defendants do not dispute, that on June 8, 2011 Mr. Carpenter was injured in an automobile accident while he was delivering a trailer from NEMF's terminal in Maryland to a "Macy's terminal in Secaucus, New Jersey[.]" (*Id.* at ¶¶1-2, 8-9.) Plaintiffs further certify that "[a]s Mr. Carpenter was exiting the New Jersey Turnpike at Exit 15X, the load in the trailer shifted causing the trailer to become unstable, and ultimately, turning the trailer and the tractor on its side." (*Id.* at ¶9.) Mr. Carpenter suffered injuries as a result of the accident and was hospitalized. (*Id.* at ¶10.) At the time the accident occurred, Plaintiffs did not know where the trailer originated from or who packed it. (*Id.* at ¶7.)

While hospitalized, Mr. Carpenter contacted NEMF to discuss the accident and whether NEMF would arrange transportation for him to return to Maryland. (*Id.* at ¶13.) Once he returned to Maryland, he contacted NEMF's payroll department with questions about his pay. (*Id.* at ¶16.) At that point, an unidentified person in that department told Mr. Carpenter that "any further contact with [NEMF] had to be made through a certain manager." (*Id.*) Mr. Carpenter certifies that he contacted that manager, though he does not provide the manager's name or when the conversation occurred. (*Id.* at ¶17.) During that discussion, the manager told Mr. Carpenter that they were not allowed to speak "about the accident or his employment because it was now a 'legal matter.'" (*Id.*) After this conversation, neither Plaintiffs nor their counsel communicated with NEMF until they served the company with the Original Complaint. (*Id.* at ¶20.)

In June 2012, a year after the accident, Plaintiffs retained Keefe Bartels as counsel. (*Id.* at ¶21.) On August 12, 2012, Plaintiffs' Counsel wrote a letter to NEMF's workers' compensation

carrier, Liberty Mutual, in an attempt to identify any third-party defendants. (Docket #19-1: 2; Sullivan Certification, ¶5.) Liberty Mutual did not respond to Plaintiffs' Counsel's request. (*Id.*) Plaintiffs' Counsel followed up with Liberty Mutual with a phone call five months later, but did not receive a response. (Docket #19-1: 2; Sullivan Certification, ¶6.)

On November 21, 2012, Plaintiffs' Counsel filed an Open Public Records Act ("OPRA") request with the New Jersey State Police ("NJSP"). The NJSP told Plaintiffs' Counsel that it did not have any records because it forwarded them to the New Jersey Turnpike Authority ("NJTA"). (Docket #19-1: 2; Sullivan Certification, ¶7.) Consequently, on November 27, 2012, Plaintiffs' Counsel filed an OPRA request with the NJTA. (Docket #19-1: 3; Sullivan Certification, ¶8.) The NJTA responded with its report of the investigation and photos from the accident scene. (Docket #19-1: 3; Sullivan Certification, ¶9.) That report, however, did not contain information of "who packed the trailer or where it originated." (Pl. Rule 56.1(a) Statement, ¶24.) Plaintiffs' Counsel then contacted the Occupational Safety and Health Administration and the National Highway Safety Transportation Administration to determine whether those agencies investigated Mr. Carpenter's accident. (*Id.* at ¶¶25-26.) Both agencies advised Plaintiffs' Counsel that they did not investigate the accident. (*Id.* at ¶26.) Plaintiffs do not specify when they contacted these agencies or when the agencies responded. (*See Id.* at ¶26; Docket #19-1: 3; Sullivan Certification, ¶11.)

On June 4, 2013, Plaintiff filed his Original Complaint in the Superior Court of New Jersey Law Division – Middlesex County. (Docket #19-5: 2; Sullivan Certification, Exhibit F.) Three days later, Plaintiff filed an Amended Complaint, adding his wife, Ann Carpenter, as a plaintiff and alleging her per quod claim against fictional defendants. (Docket #19-5: 6; Sullivan Certification, Exhibit G.)

Both Complaints named NEMF as a discovery defendant. Neither the Original nor the Amended Complaint included Macy's or World Kitchen as defendants. Instead, the Original Complaint included John Does 1-10 and ABC Corps. 1-10, which were described as "fictitious names representing one or more persons, partnerships, corporations or otherwise, whose identities are presently unknown to Plaintiff, and who are liable to Plaintiff[.]" (Docket #19-5: 2; Sullivan Certification, Exhibit F.) The Original Complaint further described the fictional parties as:

> [P]arties who either owned, maintained, serviced, packed, loaded, braced and/or fastened, or were otherwise responsible for the tractor, trailer and/or the contents of such trailer that was operated by plaintiff, Dana Carpenter, or are otherwise vicariously responsible and/or liable for any such actions that caused the previously described incident involving plaintiff, Dana Carpenter.

(Docket #19-5: 3; Sullivan Certification, Exhibit F.) In addition, the Amended Complaint alleged that:

> As a direct and proximate consequence of Defendants, John Does, 1-10's and/or ABC Corps. 1-10's carelessness, recklessness, gross negligence, negligence and/or deviation from any applicable acceptable and reasonable levels of care, plaintiff Dana Carpenter, was caused to suffer severe, multiple, and permanent bodily injuries, has suffered anguish, emotional distress, has lost and will continue to lose time from employment and income and, has incurred and will continues to incur large sum of money for medical care and attention.

(Docket #19-5: 8; Sullivan Certification, Exhibit G.)

NEMF moved to dismiss Plaintiffs' Amended Complaint on June 19, 2013. (Pl. Rule 56.1(a) Statement, ¶35.) The Superior Court of New Jersey denied the motion and ordered that discovery be completed by December 15, 2013. (*Id.* at ¶¶37-38.) Accordingly, NEMF responded to Plaintiffs' Amended Complaint on August 29, 2013, but did not produce any documents or identify Macy's or World Kitchen as possible defendants. (*Id.* at ¶39.) On October 25, 2013,

4

Plaintiffs served a Notice to Produce on NEMF requesting an answer to their interrogatories. (*Id.* at ¶42.) NEMF responded on November 1, 2013 and attached a copy of the Bill of Lading, which "identified that the trailer originated from and was shipped by [World Kitchen]" and that "the consignee for the shipment was Macy's." (*Id.* at ¶44.)

Plaintiffs moved for leave to file a Second Amended Complaint ("SAC") on December 23, 2013 in order to add World Kitchen and Macy's as defendants. (*Id.* at ¶46.) The motion was granted on January 17, 2014 and Plaintiffs filed their SAC on February 27, 2014. (*Id.* at ¶¶47-48.) Plaintiffs forwarded the SAC to Guaranteed Subpoenas on April 14, 2014. (*Id.* at ¶49.) In turn, Guaranteed Subpoenas served World Kitchen on May 22 and Macy's on July 7. (*Id.* at ¶50.)

World Kitchen removed this case to the District of New Jersey on June 20, 2014. (Docket #1.) This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), given the parties' diversity of jurisdiction and the fact that damages in controversy exceed $75,000. (Docket #1.) On September 22, 2014, World Kitchen filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment pursuant to Rule 56. (Docket #16.) On October 6, 2014, Macy's filed a cross-motion for judgment on the pleadings pursuant to Rule 12(c). (Docket #18.) This Court converted World Kitchen's motion on the pleadings to a motion for summary judgment on November 11, 2014. (Docket #25.) The parties were notified accordingly. (*Id.*)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under Rule 12(c), a court must view the facts in the pleadings and any inferences drawn therefrom in the light most favorable to the nonmoving party, and the motion should not be

5

granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Perez v. Griffin*, 304 Fed. Appx. 72, 74 (3d Cir. 2008) (citing *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004)). A court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences or unsupported conclusions in its Rule 12(c) review. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir.1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See, e.g., Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III. DISCUSSION

New Jersey law provides a two-year statute of limitations for personal injury actions such as the ones at issue in this case. *See* N.J.S.A. § 2A:14–2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued.") This same statute of limitations applies to a spouse's per quod claim. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 570 (3d Cir. 1976). "The naming of a [fictitious] defendant in a complaint does not stop the statute of limitations from running . . . as to that defendant." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3rd Cir. 2003).

Plaintiffs filed their original complaint on June 4, 2013, six days before the expiration of the statute of limitations. (Docket #19-5: 2; Sullivan Certification, Exhibit F.) In that complaint, Plaintiffs named several fictitious parties as defendants. (*Id.*) They filed their Second Amended Complaint, in which they substituted one of the ABC Corps. with World Kitchen and another with Macy's, on February 27, 2014, over eight months after the statute of limitations expired. (Docket #19-5: 6; Sullivan Certification, Exhibit G.) Therefore, Plaintiffs' Second Amended Complaint is time-barred as to Defendants "unless it meets the requirements of [Rule 15(c)], which allows amendments to relate back to the filing date of the original complaint." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 276 (3d Cir. 2004).

Defendant World Kitchen argues that summary judgment should be granted in its favor because Plaintiffs failed to exercise diligence in discovering World Kitchen's identity. Defendant Macy's argues that its cross-motion for judgment on the pleadings should be granted because Plaintiffs knew that Macy's was a possible defendant at the time the injury occurred. Given the

reasons that follow, World Kitchen's motion for summary judgment is denied and Macy's motion for judgment on the pleadings is granted.

### A. World Kitchen's Motion for Summary Judgment.

Federal Rule of Civil Procedure 15 provides three circumstances in which a claim may relate back to the original complaint. World Kitchen argues that Plaintiffs' claims do not relate back to the original complaint under any of these options because: (1) Plaintiffs "did not exercise due diligence in ascertaining the identity of World Kitchen," (2) Plaintiffs are seeking to add new parties rather than new claims, and (3) Plaintiffs did not provide World Kitchen with notice of this action within 120 days after filing the Original Complaint. (Def. Br. 8, 12.) This Court finds that Plaintiffs' claims relate back to the Original Complaint pursuant to Federal Rule of Civil Procedure 15(c)(1)(A). As such, it is unnecessary to consider Defendant's other two arguments.

Under Rule 15, an amended complaint may relate back to the original complaint if "the law that provides the applicable statute of limitations allows relation back[.]" Fed. R. Civ. P. 15(c)(1)(A). New Jersey law permits an amended complaint to relate back "if the defendant's true name is unknown" at the time the complaint is filed.[1] *See Padilla*, 110 F.App'x at 277 (quoting N.J.R. 4:26-4). This fictitious party rule, however, "may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." *DeRienzo v. Harvard Indus., Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) (citing *Farrell v.*

---

[1] In order for a plaintiff to properly invoke the fictitious defendant rule:

> First, the plaintiff must not know the identity of the defendant said to be named fictitiously. Second, the fictitiously-named defendant must be described with appropriate detail sufficient to allow identification. Third, a party seeking to amend a complaint to identify a defendant previously named fictitiously must provide proof of how it learned the defendant's identity. Fourth, although not expressly stated in the Rule, it is well-settled that the Rule is unavailable to a party that does not act diligently in identifying the defendant.

*Sarmineto v. St. Mary's Hosp. Passaic, NJ*, No. 10-2042, 2012 WL 5250219, at *4-5 (D.N.J. Oct. 23, 2012) (Linares, J.) (citing *Andreoli v. State Insulation Corp.*, No. A–2636–10T4, 2011 WL 4577646 (N. J. Super. Ct. App. Div. Oct. 5, 2011)).

*Votator Div. of Chemetron Corp.*, 62 N.J. 111 (1973); *Claypotch v. Heller, Inc.*, 360 N.J. Super. 472 (2003)). Therefore, the rule cannot apply if a plaintiff knows, or should have known through due diligence, the defendant's identity prior to the expiration of the statute of limitations. *Id.* (citing *Mears v. Sandoz Pharms.*, Inc., 300 N.J. Super. 622 (App. Div. 1997)).

In this Circuit, a plaintiff must "'investigate all potentially responsible parties in a timely manner' to cross the threshold for due diligence." *DeRienzo*, 357 F.3d at 354 (quoting *Matynska v. Fried*, 175 N.J. 51, 53 (2002)). Though "[t]he New Jersey Supreme Court has not provided a standard definition of diligence, since 'the meaning of due diligence will vary with the facts of each case[,]'" New Jersey case law "provides helpful guidance in understanding the parameters for the exercise of diligence." *Id.* (quoting *O'Keefe v. Snyder*, 416 A.2d 862, 873 (N.J. 1980)). As explained below, a key factor that courts considered in these cases in order to determine whether a plaintiff crossed the diligence threshold was whether the plaintiff took sufficient steps to discover the identity of a party that was easily ascertainable. *See e.g.*, *Matynska*, 175 N.J. at 53 (holding that plaintiff did not exercise diligence because he "could have easily discovered" the identity of the unknown defendant "[b]y merely looking in a telephone book or contacting [the known parties]"); *Mears*, 300 N.J. Super at 629 (holding the same because plaintiff "would have easily discovered the identity" of the unknown defendant if he had made "a simple inquiry" at the job site or if plaintiff's counsel had made a simple inquiry to plaintiff's employer); *Greczyn v. Colgate-Palmolive*, No. A-6646-04T1, 2006 WL 1236695, at *1 (N.J. Super. Ct. App. Div. May 10, 2006) (holding the same because plaintiff delayed in prosecuting her claim and failed to make "the simplest of inquiries," like asking her employer basic questions about the accident site.); *Younger v. Kracke*, 236 N.J. Super 595, 600-01 (Law Div. 1989) (holding the same because plaintiffs failed to make a phone call to the State Police Department even though

plaintiffs knew that the police had reports concerning the accident, which would have revealed the identities of the unknown defendants. The Court noted that plaintiffs "did not even make this simple inquiry to ascertain the true identity of these parties.").

In *Matynska v. Fried*, the Supreme Court of New Jersey denied a plaintiff's request to amend her complaint under the fictitious party rule because she failed to investigate "all potentially responsible parties in a timely manner." 175 N.J. at 53-54. In that case, the plaintiff brought a malpractice suit against her regular orthopedic surgeon and several fictitious parties. Her regular surgeon had been replaced with a different physician, whose identity was not discovered until after the statute of limitations had expired. *Id.* at 52. The Supreme Court of New Jersey reasoned that "[b]y merely looking in a telephone book or contacting Dr. Fried or the hospital . . . plaintiff could have easily discovered Dr. Feierstein's role in her surgery." *Id.* at 53. Thus, the Court held that the plaintiff failed to cross the threshold for due diligence. *Id.*

Similarly, in *Mears v. Sandoz Pharmaceuticals,* a New Jersey appellate court found that the plaintiff "would have easily discovered the identity" of the fictitious party within the statute of limitations had the plaintiff made a "simple inquiry at the job site[.]" 300 N.J.Super. at 629. In doing so, the appellate court noted that there was "nothing in [the] record to show or even suggest that plaintiff could not have obtained the information from [the defendants]." *Id.* at 631. The court also reasoned that if plaintiff's counsel had made a simple inquiry to plaintiff's employer or had requested certain documents from the known parties, counsel would have discovered the new party's identity before the statute of limitations expired. *Id.* at 632.

In the matter at hand, Plaintiffs took sufficient steps to attempt to discover World Kitchen's identity. Plaintiffs' Counsel did not contact NEMF because, among other reasons, Mr. Carpenter was not allowed to communicate with the unidentified manager since the accident was

a "legal matter." (Pl. Rule 56.1(a) Statement, ¶¶17, 22.) Mr. Carpenter attempted to speak with them about the accident, but got no information. Counsel contacted NEMF's workers' compensation provider twice, but did not receive a response. He contacted the police department, and later the NJTA. Plaintiffs received the NJTA's report of the investigation and photos from the accident scene, but the report did not contain information of "who packed the trailer or where it originated." (*Id.* at ¶24 Plaintiffs also certify that they contacted the Occupational Safety and Health Administration and the National Highway Safety Transportation Administration to determine whether those agencies investigated Plaintiff's accident.

Because Plaintiffs' Counsel could not get the necessary information to discover any unknown parties, he named NEMF as discovery defendants. Even then, NEMF did not give plaintiffs the information they needed. Instead of answering the requests they made in the complaint, NEMF moved to dismiss. That motion had to be briefed and argued. Once the motion was denied, Counsel served his discovery requests to NEMF, but NEMF failed to answer. It was only after Plaintiffs filed a notice to produce an answer to their interrogatories that NEMF produced the bill of lading. Once Plaintiffs discovered World Kitchen's identity, they diligently amended their Amended Complaint and served World Kitchen.

At the same time, World Kitchen has not provided any facts or arguments as to why it would be prejudiced if Plaintiffs' claims are permitted to relate back to the original complaint. It has not argued that the delay impaired its ability to defend against the suit or that it "was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendment [ ] been timely." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 206-07 (3d Cir. 2006) (quoting *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989)).

Because Plaintiffs have shown that they were sufficiently diligent in discovering World Kitchen's identity and World Kitchen has failed to show that it would be otherwise prejudiced, this Court finds that Plaintiffs' Second Amended Complaint relates back to their Original Complaint. As such, World Kitchen's motion for summary judgment is denied.

**B. Macy's Cross-Motion for Judgment on the Pleadings.**

As explained above, the fictitious party rule cannot apply if a plaintiff knows, or should have known through due diligence, the defendant's identity prior to the expiration of the statute of limitations. *DeRienzo*, 357 F.3d at 353 (citing *Mears*, 300 N.J.Super. at 629); *Sarmineto*, 2012 WL 5250219, at *4-5. Here, Rule 15 is inapplicable to Plaintiffs' claims as asserted against Macy's because Plaintiffs knew the identity of Macy's at the time the accident occurred. (Pl. Rule 56.1(a) Statement, ¶8) ("At some point prior to arriving in New Jersey, Mr. Carpenter was verbally directed to deliver the trailer to a Macy's terminal in Secaucus, New Jersey[.]").

Though Macy's makes this argument in its motion, Plaintiffs do not respond to it. Instead, they contend that, prior to filing this lawsuit, they did not have "any bills of lading or other documents that showed . . . Macy's as the consignee" and that "Mr. Carpenter had no personal knowledge about . . . Macy's involvement in the ordering or packing of the trailer." (Pl. Br. 19, 22.) Plaintiffs, however, do not explain the legal significance of the difference between knowing that the trailer was being delivered to Macy's and knowing that Macy's was a consignee or was involved in ordering the trailer for the purpose of a Rule 15 analysis. They also do not cite to any authority in support of the proposition that this distinction is relevant. Based on the facts, this Court cannot reasonably infer that Plaintiffs did not know the identity of Macy's when the accident occurred.

Because Plaintiffs' claims against Macy's are time barred and do not relate back to the Original Complaint, Macy's cross-motion for judgment on the pleadings is granted.

## IV. CONCLUSION

Based on the reasons set forth above, Defendant World Kitchen's motion for summary judgment [CM/ECF No. 16] is denied. Defendant Macy's Inc.'s cross-motion for judgment on the pleadings [CM/ECF No. 18] is granted. Plaintiffs' Second Amended Complaint is dismissed *with prejudice* as to Defendant Macy's.

An appropriate Order accompanies this Opinion.

Jose L. Linares
United States District Judge

Dated: December 29, 2014